At March Term, 1834, for Laurens district, the defendant Thomas D. Steedman was convicted of gaming. The sentence (which was a fine, of one thousand dollars) was left sealed and was not published until the Fall Term, 1836. In December 1836 the defendant received a pardon from the Governor. The land on which the defendant (Steedman) resided had been purchased by him from the ordinary in October, 1832, for five hundred and fifty-three dollars, and stood mortgaged .to secure the purchase money. The other defendant, (Fuller,) was surety on the bond. Steedman wras a man of irregular habits, and much involved in debt, both to his co-defendant and to other persons. On 5th March, 1836, he executed an absolute conveyance to A. Fuller, for the tract of land on which he resided, containing three hundred and ninety acres, for the sum of one thousand nine hundred and fifty dollars. On 11th July, Mrs. Steedman renounced her dower. It was proven on 25th July, 1836. On the 25th July, 1836, the Clerk certifies that the deed -was recorded, but at what time did not appear to the Court, nor is it perhaps very important. Cotemporaneously with the execution of the conveyance, an agreement bearing the same date, ■ was executed by the *28 parties, in the following words, viz : “ Articles of Agreement between Alsey Fuller and Thomas D. Steedman relative to the purchase of a tract of land this day sold and deeded to Alsey Fuller, by the said Thomas D. Steedman, at five dollars per acre, supposed to contain three hundred and ninety acres, which precise quantity is to be fixed by re-survey during the present year. The said Alsey Fuller in payment for said land obligates himself to pay off immediately all judgments in the Sheriff’s office, which are at this time pressing the said Steedman, and as early as convenient afterwards to pay to the ordinary the note given him by the said Thomas D. Steedman, for the purchase of said land, and any other judgments or mortgages that have a lien on said land at this time ; the balance of the purchase money to be paid the 1st day of November, 1837. The said Steedman to occupy and cultivate said land the present year; the said Fuller shall be at liberty to cut timber trees, if he should want them. The land and premises to be delivered up on the 1st January next, unless our agreement hereinafter made shall be complied with. The said Alsey Fuller further agrees to give the said Thomas D. Steedman the liberty of redeeming the said land, or in other words agrees to rescind the contract, provided he, the said Steedman, shall well and truly pay or cause to be paid back to the said Alsey Fuller, on or before the first day of January next, all the money advanced for the said Steedman, including his, said Fuller’s, own judgments at this time held, and ten per cent discount on the same, for the use of the money and trouble in settling the debts, and all other debts that he the said Steedman now owes, or may owe the said Fuller, on 10th day of January next. If all said money shall not be paid up by the date above mentioned, then the contract to remain as above made. The said Fuller shall be at liberty to hold back the last payment until the wife’s dower be made.” This agreement was sealed and delivered in the presence of the same witnesses, but does not appear to have been ever recorded. At the date of this transaction, the land was under levy, and advertised for sale by the sheriff of the district. In pursuance of the agreement, the land was surveyed by Gen. Wright, in March, 1837, and was *29 found to contain only three hundred and thirty-nine 3-4 acres. In the defendant’s (Fuller’s) answer, he states that he paid off and satisfied the judgments and other liens upon the land, the amount of which, together with the debts due by the said Steedman, exceeded the amount of the price to he paid for the land ; that Steedman wholly faded on his part to rescind the contract, or to pay back any part of the money -advanced by the defendant, (Fuller,) and on or about 1st January, 1837, delivered to him the possession of the land according to the terms of the contract, and he “ insists on the purchase of the land as strictly fair and for a full consideration.”
It appeared from the testimony, .that at the time of the re-survey by Gen. Wright, he marked the boundary of about 100 acres, which was to be taken out of the entire tract. Sometime after 1st January, 1837, Fuller assisted Steedman, with his horses and team, in moving to a house which Steedman had built on this 100 acre tract. Steed-man has since always continued to reside on and cultivate this part of the land. At Fall Term 1836, the complainant entered judgment against Steedman on a promissory note payable in January 1835 ; execution was immediately issued, which was returned nid}a bona. It was recently renewed and levied on the 100 acre tract of land, on which Steedman resides, but the sale was forbidden by Fuller, who claims the land as part of the; 390 acres which were conveyed to him by the deed of 5th March, 1836. The object of the bill is to set aside this deed as fraudulent. In. the course of the argument, on the -part of the complainants something was said about construing the entire transaction as a mortgage. But it is enough for the Court to say that this is not the issue tendered by the pleading; nor is the bill framed with that view, nor in the form in which such proceeding should be presented.. Both parties insist that it was an absolute .conveyance. -Complainants alledge it was covinous; defendant, that it was bona fide, for full consideration, and valid in law. With the answer of the defendant Fuller, is filed an account marked exhibit [C} showing the manner in which he had paid for the land, according to the survey of Gen. Wright, the purchase money was $1698 75. The elder judgments which he ■ paid off *30 amounted to $288 75; the bond to the ordinary, on which he was surety to Steedman, to $620 12 1-2 ; the balance of the purchase money was extinguished by debts due to himself by Steedman. It is admitted that Steedman has never been out of possession of the 100 acres, being part, of the tract of 340 acres thus sold to his co-defendant. The account given in Fuller’s answer is this; “ he admits that some time after he bought the land, he told Steedman if he would pay for it he might have one hundred acres of the land, but this was a mere conversation, and Steedman has never paid to the defendant one dollar towards said land.” Steedman states that he did not remove to the 100 acre tract till about two years after the execution of the conveyance — that he would not have let Fuller have the land if he had not agreed to let him have the 100 acres, and that he had never paid any rent for the land, although he had been repeatedly asked for it by Fuller, who told him if he would give a little rent note he might have the land. In the view taken by the Court, the discrepancy in the statements of the defendant is not very material. Fuller being the principal creditor of Steedman, who was then insolvent, purchases from him all that was left of his property. In part payment, it is agreed that his existing and future debts to Fuller shall be extinguished. Steedman is allowed to remain in possession of nearly one third of the property so sold, from that time to the present. In Maples vs. Maples, Rice Eq. 310, it is said by the Court, “ when a debtor sells his property to one of several creditors, in satisfaction of his debt, the creditor becomes the owner of the property, and the debt is gone.
If, instead of enjoying that which is his own, the creditor permits the debtor to have the use of the property without hire or reward, this is inconsistent with tire ordinary conduct of men having a moderate regard to their own interest; it seems an advantage to the debtor to which he is not entitled, by giving him an interest in the property which cannot be rendered available to his other creditors in satisfaction of their demands. It creates a presumption of unfair dealing, that the preference which has been given was the price of this undue advantage.” In Smith vs. Henry 1 Hill, 22, on the authority of which Maples vs. *31 Maples was decided on the circuit, the court remarked that the conditions of such sales are usually known only to the parties, and are incapable of proof. But they decided that it is immaterial whether there was or was not an express stipulation, that the creditor should show indulgence and permit the debtor still to enjoy his property. If the transfer was made by the debtor in a “ tacit confidence, that he to whom the preference was given, would show the indulgence, <fcc., this would be done with a corrupt purpose, to which the creditor would make himself accessory, by allowing the debtor to retain and use the property.” It was also held in that case, “ to make no difference, that besides the pre-existing debts, additional consideration was advanced at the time of the conveyance.” This would open a door to the whole abuse against which the law intends to guard.” The court determined that the secret trust, which the law regards as fraudulent, was evidenced by the debtor retaining possession — that from these circumstances, the law draws the conclusion of fraud, which is incapable of being rebutted or explained.” It is now well settled that a debtor has the right to give a preference among, his creditors; but if, in the deed of assignment, he secures any advantage or contract to himself, this provision invalidates the deed. Now, the circumstance of leaving the debtor in possession of the property, supplies the place of a provision to that effect in the assignment or conveyance. The law presumes an understanding between the parties ; infers the existence of a secret trust; and so far as the rights of creditors are effected, the deed is void. It seems impossible to withdraw this case from the operation of these principles. It remains only for the .court to declare, that as to these complainants, and their rights to proceed under the levy made by the sheriff, the deed of 5th of March, 1836, is null and void, and it is so ordered.and decreed.
From this decree the defendants appealed, on the following grounds :
1st. Because the sale of the tract of land in dispute, made by Steedman to Fuller, was bona fide, for a full consideration, which was paid, and was therefore valid.
2nd. Because the deed from Steedman to Fuller was *32 executed on the 5th March, 1836, and recorded on the 26th July, 1836, within six months, which operated as notice, and the subsequent possession of a part of the land by Steedman constituted no evidence of fraud.
3rd. Because the covenant entered into between Steed-man and Fuller on the day the conveyance for the land was executed, was an independent covenant, by which no advantage was secured to Steedman, and the subsequent conversation that Steedman should have a part of the land, if he paid for it, was not binding, nor did it furnish any evidence of fraud.
' 4th. Because there was no evidence of fraud, and the decree of the Chancellor is erroneous.
5th. Because if the deed -should be set aside as an absolute conveyance, it should stand as a mortgage, and Fuller should be reimbursed the amounts advanced to Steedman and on his account, with the interest thereon.